**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equity Solutions LLC, | No. CV-12-02646-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Reginald D. Fowler; Spiral Inc., | |
| Defendants. | |

The court has before it plaintiff Equity Solutions LLC's ("Equity") motion for partial summary judgment on its first and third claims for relief (doc. 61), defendants' response (doc. 70), and Equity's reply (doc. 76). We also have before us defendants' motion for partial summary judgment on Equity's alter ego theory of recovery (doc. 63), Equity's response (doc. 72), and defendants' reply (doc. 77).

**I. Background**

Defendant Reginald D. Fowler is the president and sole shareholder of defendant Spiral Inc, which has numerous subsidiaries and affiliates. From September 2009 through January 2010, the German entity CSA Beteiligungsfonds 5 AG & Co. ("CSA") advanced approximately €13 million in investment capital to Spiral in exchange for an equity

investment by CSA into the Spiral affiliates.[1]

Between April 2010 and December 2011, Spiral and its affiliates returned approximately €10 million of the €13 million advanced by CSA, leaving a balance due of approximately €3 million. On December 21, 2011, Fowler approved the transfer by CSA of its interest in the Spiral affiliates to CSA's successor entity, Equity Solutions LLC, "in full and without reservation." ("Approval") PSOF ¶¶ 9, 10. The Approval was signed by "Reggie Fowler." On that same day, Fowler also executed a "Statement of Commitment" which provided in relevant part:

> I, Mr. Reggie Fowler, hereby irrevocably confirm that I will take over and purchase from the Equity Solutions LLC the shares of the Spiral-Group, . . . as originally held by the CSA Beteiligungsfonds . . . at the agreed upon total price in the amount of 3 million EUR.

PSOF ¶ 11 ("Statement of Commitment"). Again, the agreement was signed "Reggie Fowler." Equity contends that this language conclusively demonstrates that Fowler signed the documents in his individual capacity, making him personally liable on the Spiral debt to Equity. Neither Fowler nor Spiral has repaid Equity. This lawsuit followed.

Plaintiff now moves for summary judgment on its breach of contract claims against Fowler and Spiral asserted in Counts 1 and 3, respectively. Defendants seek summary judgment on plaintiff's alter ego claims of liability and their condition precedent argument.

## II. Equity's Motion for Summary Judgment

### A. Fowler Liability (Count 1)

Equity argues that Fowler is personally liable on Spiral's debt to Equity as evidenced by his signature on the Statement of Commitment and Approval. Fowler signed the agreements "I, Mr. Reggie Fowler," without any reference to Spiral. Nevertheless, Fowler argues that he executed both agreements as president of Spiral, and that CSA and Equity had actual knowledge of his corporate role. He contends that during the eight-year relationship with CSA, all business matters were conducted by Fowler as president of Spiral. According

---

[1] This debt is alternatively described as a loan by CSA to Spiral, secured by an interest in the Spiral affiliates.

- 2 -

to Equity, however, Fowler did not disclose his corporate capacity at the time he signed the agreements and any evidence to the contrary is barred by the parol evidence rule.

Courts will generally attempt to enforce a contract according to the parties' intent. Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). Extrinsic evidence, including negotiations, prior understandings, and subsequent conduct, is admissible for purposes other than varying or contradicting the terms of a final agreement. Id.; Pinnacle Peak Devs. v. TRW Invest. Corp., 129 Ariz. 385, 389, 631 P.2d 540, 544 (1980) (considering parol evidence "to prove the usages and customs in relation to which the parties contracted"). In the absence of fraud or mistake, however, parol evidence "may not be used to change, alter or vary the express terms in a written agreement." Brand v. Elledge, 101 Ariz. 352, 358, 419 P.2d 531, 537 (1966).

We reject Equity's argument that the documents unambiguously demonstrate that Fowler signed the agreements in his individual capacity. Although the documents are signed "I, Reggie Fowler," there is no express indication of Fowler's capacity. In fact, there is no mention of individual or corporate capacity at all. The absence of a reference to corporate capacity does not conclusively demonstrate personal liability. Therefore, an ambiguity exists as to Fowler's capacity in executing the documents and we may consider parol evidence to determine the parties' intent.

It is undisputed that when the debt originated, the agreement was between CSA and Spiral. Therefore, when CSA transferred its interest in the debt to Equity, it transferred Spiral's corporate obligation. Fowler approved the transfer and, by way of the Statement of Commitment, agreed to pay Equity instead of CSA. If this was a personal guarantee by Fowler to pay Spiral's debt, as Equity contends, then consideration for that promise is required. However, none is shown.

Equity also points to an accounting entry showing that "[t]he [Spiral] debt was transferred to Spiral's shareholder [Fowler] in 2010." PSOF ¶¶ 5-6. Defendants explain that "[b]ecause transactions with foreign entities can be challenging for Subchapter S limited liability companies like Spiral, [Spiral's accountants] recommended that all aspects of the

- 3 -

1  CSA transactions be carried on Fowler's [personal] ledger." DASOF ¶ 12. Fowler admits
2  that in 2010 the Spiral debt to CSA was booked as Fowler's personal debt. PSOF ¶ 5.
3  Nevertheless, between April 2010 and December 2011, "Spiral and/or Spiral Affiliates
4  returned approximately €10 million of the €13 million advanced by CSA." Plaintiff's MSJ
5  at 2. Why would Spiral make the payment if the debt had been assumed by Fowler? The
6  parties clearly understood that the debt remained with Spiral.

7  Finally, Equity argues that when an agent contracts on behalf of an undisclosed
8  principal, both the agent and the principal are parties to the contract. Restatement (Third)
9  of Agency § 6.03 (2006). Equity contends that Spiral was an undisclosed principal and
10 therefore, even if Fowler executed the agreements on behalf of Spiral, both he and Spiral are
11 liable. But Spiral was hardly an undisclosed principal.

12 Disclosure of the principal requires that the agent give the other party both "notice that
13 the agent is acting for the principal and has notice of the principal's identity." Id., §
14 1.04(2)(a). Fowler, Spiral and CSA had conducted business for years, during which time the
15 parties clearly understood that Fowler was acting as president of Spiral. Spiral was a fully
16 disclosed principal. Under Arizona law, a corporate officer who signs a contract as the agent
17 of a disclosed principal is not a party to the contract and incurs no personal liability.
18 Ferrarell v. Robinson, 11 Ariz. App. 473, 475, 465 P.2d 610, 612 (Ct. App. 1970. Equity has
19 failed to establish that Fowler is personally liable for Spiral's debt.

20 Summary judgment on Count 1 is denied (doc. 61).

### B. Spiral Liability (Count 3)

22 Equity moves for summary judgment on its breach of contract claim against Spiral in
23 Count 3. It argues that it is undisputed that Spiral was obligated to pay Equity €3 million
24 on February 15, 2012,[2] and that Spiral has breached its obligation to do so.

25 Spiral moves for summary judgment on its claim that it is not liable under the

---

[2] Equity asserts, and Defendants do not dispute, that on February 15, 2012 the conversion value of €3 million was $4,042,$165. PSOF ¶ 18.

- 4 -

1 Statement of Commitment because CSA/Equity failed to satisfy a condition precedent in a
2 "Syndicate Agreement," whereby it agreed to provide Spiral with €100 million in working
3 capital. Spiral contends that neither CSA nor Equity produced the €100 million as promised,
4 and therefore Spiral is not obligated to repay the advanced funds.

5 Spiral refers to a "Syndicate Agreement" without identifying any language in the
6 agreement to support the existence of a condition precedent. This is insufficient to support
7 a motion for summary judgment on a condition precedent claim.

8 Spiral also claims that the money advanced by CSA to Spiral was an equity
9 investment, not a loan. Fowler argues alternatively that "[i]t was never the intent to be
10 repaid," Fowler Deposition doc. 64-4 at 32, and "[w]e had agreed to repay back the 3 million
11 euros to CSA. That is correct." Id. at 44. Moreover, during the summer of 2012, Fowler
12 confirmed in writing on numerous occasions that Spiral owed the €3 million to Equity.
13 Plaintiff's SSOF ¶¶ 15-23. No condition precedent was mentioned in these communications.

14 The face of the Statement of Commitment shows that Spiral agreed to repay the
15 monies advanced by CSA/Equity. Fowler admitted in both his deposition testimony and in
16 communications between the parties that Spiral owes the money. Spiral's only defense to
17 the repayment obligation–the condition precedent–is not supported by any reference to the
18 record. Therefore, we deny Defendants' motion for summary judgment on its claim that a
19 condition precedent existed that excused Spiral's obligation under the Statement of
20 Commitment (doc. 63). We grant Equity's motion for summary judgment on its claim in
21 Count 3 that Spiral is obligated under the Statement of Commitment to repay the €3 million
22 (doc. 61).

23 **III. Defendants' Motion for Partial Summary Judgment - Count 4**

24 In Count 4, Equity seeks a declaration that Fowler is the alter ego of Spiral and as
25 such he is personally liable for Spiral debts. Defendants move for summary judgment on
26 Count 4, arguing that no evidence exists to support Equity's alter ego claim.

27 A legitimate purpose of incorporation is to avoid personal liability. "[I]f the corporate
28 fiction is too easily ignored and personal liability imposed, then incorporation is

1 discouraged." Dietel v. Day, 16 Ariz. App. 206, 208, 492 P.2d 455, 457 (Ct. App. 1972). Corporate status will not be disregarded unless there is a "unification of interests and intermingling of funds, so that the corporation loses its separate identity." Chapman v. Field, 124 Ariz. 100, 102, 602 P.2d 481, 483 (1979).

In analyzing an alter ego claim, we will consider factors such as failure to maintain separate corporate identity, undercapitalization, commingling of corporate and personal finances, failure to maintain books and records, and diversion of corporate property for personal use. Deutsche Credit Corp. v. Case Power & Equip. Co., 179 Ariz. 155, 160, 876 P.2d 1190, 1195 (Ct. App. 1994). Mere identity of ownership, as in the case of a sole shareholder is insufficient to establish an alter ego. Cooper v. Indus. Comm'n, 74 Ariz. 351, 353-54, 249 P.2d 142, 143-44 (1952). Even when the conduct of the stockholders is "not a model of corporate management," unless there is fraud or evidence that the other party was misled, courts will refuse to pierce the corporate veil. Chapman, 124 Ariz. at 103, 602 P.2d at 484.

Here, it is undisputed that Spiral has existed as a separate legal entity since 1991 and has had a business relationship with CSA since 2005. It is also undisputed that during its relationship with CSA, Spiral has consistently held itself out as a separate corporate entity, and Fowler has represented himself as president. Spiral has regularly employed an accounting firm that has kept separate books and records for the corporation. There is no allegation that Spiral was undercapitalized. Nor is there any suggestion that Spiral was operated as a sham, or that Equity or CSA was misled.

Equity mischaracterizes evidence in support of its alter ego theory. It argues that Spiral and its subsidiaries, many of which are neglected and "disregarded" entities, share corporate resources, such as accounting and information technology. It contends that Spiral affiliates do not have arm's length leases in place and do not pay rent. But the business relationship between Spiral and its affiliates is not relevant to the relationship between Fowler and Spiral.

Equity also contends that Fowler transferred Spiral real property to his fiancée on

- 6 -

1  October 31, 2012.  But Equity's reference to the record does not demonstrate that it was
2  Spiral's property that was transferred.  <u>See</u> <u>Plaintiff's SSOF</u> ¶ 28, ex. 15 at 37-38 (indicating
3  that the property was owned by Fowler) (Q: "So the house you live in now was Mr. Fowler's
4  house?  A: yes)).[3]

5  Finally, Equity points to two post-receivership instances where Fowler attempted to
6  divert Spiral assets to himself.  While problematic if true, this is not sufficient evidence to
7  show that there has been such a unification of interests and intermingling of funds that Spiral
8  has lost its separate identity.

9  We grant Defendants' motion for summary judgment on Count 4 of the Complaint
10 (doc. 63).

**IV.**

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** plaintiff's motion for summary judgment (doc. 61).  Summary judgment against Fowler in Count 1 is denied.  Summary judgment is granted in favor of Equity and against Spiral on Count 3 in the amount of $4,042,165.00.

**IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN PART** defendants' motion for partial summary judgment (doc. 63).  Summary judgment is granted on Equity's alter ego claim in Count 4 of the Complaint.  Summary judgment is denied with respect to Defendants' condition precedent claim.

DATED this 27th day of January, 2014.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge

---

[3] Equity also cites to the Receiver's Report at pages 25-26, but the Receiver's Report filed at DSOF, ex. 1 contains only 12 pages.

- 7 -